No. 29,349.-

O. L. Owens, as Trustee, etc., *Appellant,* v. The Kansas Oxy-Acetylene Company et al., *Appellees.*

(292 Pac. 768.)

Opinion filed November 8, 1930.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald,* all of Wichita, for the appellant.

*Lew E. Clogston, Austin M. Cowan* and *G. Austin Brown,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: The plaintiff, O. L. Owens, as trustee for the Fidelity and Deposit Company, brought this action against the Kansas Oxy-Acetylene Company, a corporation, the Scott Brothers Construction Company, a partnership, and Clairece Scott, a daughter of one of the partners in the construction company, to compel the defendant corporation to transfer to the plaintiff twenty shares of stock in the corporation, and in the alternative against all the defendants for the value of the stock.

The claim of the plaintiff rested on an assignment of the stock in question by one of the members of the firm of the Scott Brothers Construction Company on behalf of the firm, which assignment the corporation refused to recognize because it was not accompanied by the surrender of the original certificate, as required by the corpo-

ration's by-laws. This was the defense of the corporation in this action. The defense of the other partner and his daughter was that he, on behalf of the firm, had sometime earlier assigned the certificate to his daughter to secure a loan of money to enable him to continue the construction work of the firm when funds of the firm were not available; and that she had presented the certificate to the corporation and a new certificate had been issued to her, but no transfer was made on the books of the company. The plaintiff and the first-named partner claim the assignment by the other partner to his daughter was not for partnership purposes or benefit, but for the individual expenses of such partner.

The trial court made findings of fact and conclusions of law and rendered judgment in favor of the defendants, and plaintiff appeals.

The appellant ably argues and presents the assignments of error under the following five headings:

1. The assignment of the certificate of stock of the Kansas Oxy-Acetylene Company was a partnership transaction, and as such was binding on the partners.

2. A partner cannot use partnership assets in order to pay his individual indebtedness.

3. When a partner uses partnership property to pay his individual debt, his act is a fraud upon the partnership, and either the creditors of the partnership or the other partner may look to the creditor of the individual for said partnership property.

4. To justify a partner in applying partnership property to the payment of his individual debt, the burden of proof rests upon said partner to show that the other partner acquiesced in said transaction.

5. Equity will protect a purchaser of stock even though a transfer of stock to said purchaser is not made upon the books of the company.

As propositions of law we may readily assent to each and all of these concisely stated, well-established and almost fundamental principles, but unless they apply to the facts in this particular case they will not assist us greatly in determining the issues involved. This appears to us to be a fact case and almost exclusively so. And if the facts are as the court found them to be, we find no place to apply the well-stated doctrines to modify or reverse the conclusions reached.

One of the legal propositions discussed concerns the binding force of the assignment of the stock to plaintiff. The court held it was valid and binding, but subsequent in time to the other assignment. Another proposition argued was the equitable right of a purchaser of stock when the transfer has not been made on the books of the company. The hearing and consideration of the plaintiff's urgent claim for such equitable right was in recognition of such right. But both of these points are unavailing to the appellant until the other three legal propositions are settled which depend wholly upon the fact as to whether the partner W. F. Scott made the assignment of the stock to his daughter to pay his own individual indebtedness. The court found the assignment was not for that purpose, but was made in good faith in the interest and for the benefit of the partnership.

The first four findings are, in substance, that C. R. and W. F. Scott were for many years engaged in the contracting business with headquarters in Wichita, doing business under the firm name of the Scott Brothers Construction Company; that the Fidelity & Deposit Company went on their bonds for the construction of a schoolhouse in Marion county and a church in Girard, guaranteeing the faithful performance of the contracts and the payment of labor and material, and as a result was compelled to pay claims to the approximate amount of $4,200 for the partnership; that the firm owned a certificate of stock in the Kansas Oxy-Acetylene Company, par value of $1,000, which it had acquired for $276 in a construction settlement, and for a time the whereabouts of the certificate was unknown to either partner; that C. R. Scott attended to most of the duties of the office; W. F. Scott spent most of his time on the work at various places; that both knew the firm was in financial straits; that C. R. Scott on March 22, 1928, without at the time consulting his brother, signed an agreement in settlement with the Fidelity & Deposit Company in which he, on behalf of the partnership, assigned to O. L. Owens, trustee for the Fidelity & Deposit Company, the twenty shares of stock in the Kansas Oxy-Acetylene Company, not knowing at that time where the certificate of stock was, and also executed a chattel mortgage to Owens covering the tools and equipment of the firm and a quitclaim deed to certain real estate in Wichita; that when the assignment of the stock was presented to the Oxy-Acetylene Company it refused to

make the transfer on its books because its by-laws required the surrender of the certificate.

The four remaining findings made by the trial court are as follows:

"V. For years neither C. R. Scott nor W. F. Scott, partners, had drawn any regular salary or any regular division of the income of the business, but had drawn money as needed. In the fall of 1927 the partnership had a bank account, but very little money in the bank. W. F. Scott was engaged upon construction work for the partnership near Winfield, Kan. He needed money for freight, drayage, labor and for general expense upon the construction work in question and for his own expenses while so engaged, and for the upkeep of expenses at his home while so engaged. During this time he drew no money from the partnership. He asked his daughter, Clairece Scott, to advance money to him during the months of August, September, October, November and December of 1927, which he used for the above-named purposes. Without the help of this money he would not have been able to remain at work on the partnership job, for the reason that neither the company nor himself had resources with which to pay the expenses.

"VI. December 14, 1927, W. F. Scott assigned certificate No. 165 in the Kansas Oxy-Acetylene Company for twenty shares of stock to his daughter, Clairece Scott, for the money already advanced to him, which at this time amounted to $318.50, and for the promise of future advancements. Subsequently, and on December 15, she gave her father $40; January 3, $50; January 30, $20; a total of $110, and making a grand total of $428.50, which she paid in return for having the certificate of stock assigned to her. The brother, C. R. Scott, did not know of this assignment at the time and did not know of it at the time that he assigned the stock to Owens as trustee, for the Fidelity Company.

"VII. The transactions between W. F. Scott and Clairece Scott were made in good faith and without fraud, and for the purpose of advancing the interests of the partnership, the construction company, and the money was so used and in lieu of money which would have had to have been drawn from the construction company had it had finances upon which to draw at the time.

"VIII. Shortly after the receipt of the certificate of stock with the assignment upon the back as above stated, Clairece Scott left it with her attorney for transfer, but by oversight it was not presented to the officials of the Kansas Oxy-Acetylene Company until June 15, 1928, when upon presentation of the original certificate the original stock certificate was retained by the Kansas Oxy-Acetylene Company and there was issued to Clairece Scott a new certificate for twenty shares, but no transfer was made on the books of the company of said stock to Clairece Scott."

The following are the conclusions of law made by the trial court:

"I. This action is properly brought by O. L. Owens as trustee for the benefit of the Fidelity & Deposit Company of Maryland.

"II. The assignments by C. R. Scott as a partner to Owens as trustee and by W. F. Scott as a partner to Clairece Scott, were each made with authority.

"Each assignment was made to secure and pay an obligation of the partnership.

"Each was made in good faith.

"The assignment to Clairece Scott was a prior assignment.

"III. Clairece Scott is entitled to a lien in the sum of four hundred twenty-eight ($428.50) 50/100 dollars for the money advanced to the partnership upon the certificate of stock in question, and is entitled to hold the same as security until said amount is paid.

"IV. The plaintiff herein is entitled to said certificate of stock upon the payment of said amount to Clairece Scott and the proper assignment of the certificate now held by her to the plaintiff, and thereupon plaintiff is entitled to have the same transferred upon the books of the defendant company, the Kansas Oxy-Acetylene Company, upon presentation of the certificate properly assigned, and to judgment for costs herein against the defendant, the Scott Brothers Construction Company.

"V. The Kansas Oxy-Acetylene Company was not compelled to make a transfer of the stock in question to the plaintiff herein upon the presentation of assignment, as the by-laws of the corporation had not been complied with, and is entitled to costs herein. Clairece Scott is entitled to judgment for costs herein."

Appellant insists that there was no evidence whatever to support many of the findings made by the trial court, and particularly findings No. 5 and 7, calling our attention to the evidence of the daily balances in the bank during this time, which averaged approximately $350, which is urged to have been sufficient for the purpose of enabling the partner W. F. Scott to draw from it for his individual expenses, and therefore there was no necessity of his assigning the stock to his daughter for expense money. Daily balances in a checking bank account are not generally safe and accurate data to show the amount available for use, because the account shows all the deposits but none of the outstanding checks thereon, of which there are usually all the account will stand when a firm is in financial straits, as this one appears to have been. C. R. Scott testified on these subjects as follows:

"My brother and I had agreed we would draw just as little as we could out of the general account, and our custom was that if we did draw anything it could be immediately charged up to us. We carried a personal account against each one of us. We would tear out a check from the check book and mark the stub who it was for: 'For W. F. S.' or 'For C. R. S.' . . . .

"Both my brother and myself had authority to draw checks on the partnership account at the Fourth National Bank. Nobody else had authority that I know of. It was the practice of the partnership to deposit partnership funds in that account.

"I was down at Winfield after Christmas, 1927. Frank Scott was there and I talked to him. I didn't tell him about making the assignment of this stuff

at that time. Didn't know that I was going to have to particularly. At that time they were just asking for security. During 1927 and 1928 the partnership owed about $22,000 and we had about $22,000 coming in, if we got it. We didn't have money in the bank at that time, but we had money coming from the Girard job, the McAlester job and other jobs."

W. F. Scott testified as follows:

"It was necessary that we complete the job. I didn't have any further balance in the job and the only money we had was what could be drawn on that work. This money was an advance of that in order to enable us to continue the work on that job. I was repeatedly getting money of Clairece Scott to carry on that work there. Both C. R. Scott and myself were free to draw any amount of money within reason at any time. There never was any objection offered by either as to that. I had sort of summed it down to about what the expenses were of the family and was drawing, I think, approximately $100 a month. It had been the custom through all these years of our partnership. C. R. Scott had drawn money from the partnership funds the same way.

"Money I received from Clairece Scott for certificate 165 I used in carrying on the work on the Winfield job. . . . I transferred the stock at that time to the daughter in payment of the moneys that she had advanced. She was to advance something about $110 more at that time. I did that in absolutely good faith. I did not intend in any way to delay, hinder or defraud any creditor by this transfer.

"The payments we received from the Winfield job were deposited in the bank and some other moneys were deposited there, too, and were all exhausted to the best of my recollection. During October, November and December it was necessary to carry on the Winfield work, but Scott Brothers did not have sufficient money to do so.

"During that time the partnership of Scott Brothers Construction Company had an active account in the Fourth National Bank. We did not have an active partnership account all of that time, but to the best of my recollection it became exhausted about November, 1927. We had money off and on from November, 1927, up to the time we finished the job in Cowley county, whenever there was any money in the account.

"I got the proceeds from each of the checks that were introduced in evidence. Indirectly Scott Brothers Construction Company got the proceeds. They were all used for the purpose I have stated two or three times, to make it possible to keep working on that bridge down there and get the job done. The consideration for her giving those checks was a settlement of what I felt obligated to her in which I turned over to her a certain stock certificate of twenty shares, the shares in the Kansas Oxy-Acetylene Company stock.

"Q. That is, indirectly; you mean to pay personal expenses out at the house so you could work for the partnership; is that what you mean? A. That is exactly what I mean.

"I don't recollect of drawing any money from the partnership account in the

bank after the first of November. . . . I obtained and used the money from these checks to pay those bills."

We have no difficulty in concluding from this and other testimony given that there was some evidence to support the findings of the trial court, and if the findings state the facts, and particularly finding No. 7, that the transactions between W. F. Scott and his daughter were made in good faith and for the purpose of advancing the interests of the partnership, the question of the right of a partner to make an assignment of partnership property to procure money to pay individual indebtedness is out of the case as a law point, and the conclusions of law as made are applicable to the findings of fact and are not out of harmony with any of the authorities cited by appellant.

The conclusions of the trial court that both assignments were made with authority and in good faith to secure and pay obligations of the partnership, and that the one made to the daughter was made prior to the other, appear to us to be both legal and equitable.

The judgment is affirmed.